# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ARIEL R.L.[1],<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil No. 23-1379 (GLS) |

## OPINION AND ORDER

Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA") denial of his application for Social Security Disability Insurance benefits ("SSDI"). Docket Nos. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 10. The Commissioner opposed. Docket No. 17. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 5. After careful review of the administrative record and the parties' briefs, Commissioner's decision denying disability benefits is **AFFIRMED**.

### I.   Procedural Background

Plaintiff worked as a farm machine operator and packer of agricultural produce at Monsanto Caribe until 2016. Tr. 30, 46, 142-43.[2] On June 18, 2020, Plaintiff filed an application for SSDI claiming that, as of July 11, 2016, the following conditions limited his ability to work: depression, anxiety, psychosis, diabetes, high cholesterol, claustrophobia, and allergies. Tr. 21, 315. Plaintiff received treatment from several doctors as evidenced by his disability report. The application was denied initially and upon reconsideration. Tr. 315-361. Plaintiff requested a

---

[1]   Plaintiff's last name is omitted for privacy reasons.

[2]   "Tr." refers to the transcript of the record of proceedings.

1

hearing before an Administrative Law Judge ("ALJ") and, on April 19, 2022, a hearing was held via telephone before ALJ Ruy Díaz. Tr. 44-70. Plaintiff testified and was represented by counsel. Id. Vocational Expert ("VE") Araceli Figueroa testified at the hearing. Id. On May 12, 2022, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of July 11, 2016, through March 31, 2022, the last date insured. Tr. 32. Plaintiff asked the Appeals Council to review but the request was denied on May 26, 2023, rendering the Commissioner's decision the final decision for review by this Court. Tr. 1-4. On July 21, 2023, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 10, 17.

## II. Legal Framework

### A. Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the

requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

### B. Standard of Review

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla." It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, 587 U.S. 97, 103-04 (2019).

A determination of substantiality must be based in the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir.1987).

### III.    Discussion
#### A. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 11, 2016, the alleged onset of disability. Tr. 23. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): lumbar degenerative disc disease, bilateral Carpal Tunnel Syndrome, elbow bursitis, left shoulder tendinopathy, obesity, and major depressive disorder. Id. The ALJ further found that Plaintiff had several impairments that were not severe because they did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 23-24. The ALJ classified Plaintiff's diabetes, high blood pressure, and high cholesterol as non-severe impairments. Tr. 24. The ALJ determined that Plaintiff's allergies were not a medically determinable impairment. Tr. 24. The non-severe impairments were accounted for along with Plaintiff's severe impairments in determining his RFC. Id.

At the third step of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24. The ALJ concluded that the "Paragraph B" criteria were not met because Plaintiff's mental impairments did not result in at least one extreme or two marked limitations in a broad area of functioning. Tr. 24-25. Having concluded step three of the analysis, the ALJ proceeded to determine Plaintiff's RFC. Tr. 25. The ALJ stated that, in formulating the RFC, he considered all impairments, including those that were non-severe (Tr. 24-25), and that his findings regarding Plaintiff's mental functioning were also considered. The

ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. 404.1567(b), except:

> lifting 20lbs occasionally and 10lbs frequently; carrying 20lbs occasionally and 10lbs frequently; sitting for 6hrs, standing for 6hrs, walking for 6hrs. He can push and pull as much as can lift and carry. He is limited to frequently reaching overhead to the left. For all other reaching he can reach frequently to the left. He can handle items frequently with the left hand, and can handle items frequently with the right hand. He has fingering limitations frequently with the left hand, and has fingering limitations frequently with the right hand. The claimant has feel limitations frequently on the left, and has feel limitations frequently on the right. The claimant can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop frequently, kneel frequently, crouch occasionally, crawl occasionally. The claimant can work at unprotected heights occasionally, moving mechanical parts occasionally, in vibration occasionally. He is able to perform simple, routine tasks and make simple work-related decisions and is able to interact with supervisors and coworkers frequently and the public occasionally.

Tr. 25. The ALJ then concluded that Plaintiff could successfully adjust to other work that existed in significant numbers in the national economy, such as a marker, router, and order caller. Tr. 31-32. The ALJ found that Plaintiff was not disabled. Tr. 32.

### B. Plaintiff's Allegations of Error

Plaintiff moves to reverse the Commissioner's decision on the following grounds: (1) the ALJ failed to follow the psychiatric review technique and Social Security Regulation ("SSR") 96-8p when evaluating Plaintiff's mental impairments and (2) the VE's testimony regarding jobs that Plaintiff could perform was in conflict with the reasoning levels assigned in the Dictionary of Occupational Titles ("DOT"). The Court finds no error.

#### 1. Mental RFC Assessment

The Social Security defines an RFC as the most an individual can do despite his limitations. 20 C.F.R. § 404.1545. In determining an RFC, all recorded medically determinable impairments that are suffered by claimant are considered, including non-severe impairments. Id. Because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Olivera-Bahamundi v. Comm'r of Soc. Sec., 2021 WL 1177339, at *5 (D.P.R. Mar. 29, 2021) (citations omitted). The ALJ must base his determination on all relevant evidence, including Plaintiff's

5

medical record, medical opinions, and his description of his limitations. See Vázquez-Velázquez v. Comm'r of Soc. Sec., 2021 WL 9275723 at, *5 (D.P.R. Sept. 23, 2021); 20 C.F.R. §§ 404.1545, 404.1546. The ALJ found evidence of major depressive disorder, but determined that Plaintiff could perform, simple, routine tasks. Tr. 26. The ALJ noted that Plaintiff had a partial psychiatric hospitalization in October 2019 but was released the following day (Tr. 26-27, 165-67, 171, 174). The ALJ further noted that (1) Plaintiff was found cooperative and responsive despite being sad and depressed (Tr. 27, 180, 586, 605, 778-87); (2) Plaintiff generally appeared oriented, logical, coherent, and calm (Tr. 27, 180, 331, 354-57, 586, 605); and (3) Plaintiff could follow instructions (Tr. 29, 331, 354-57). While Plaintiff had a history of paranoid and suicidal ideations, the ALJ indicated that this was now controlled with medication. Tr. 27, 586-587. The ALJ further indicated that Plaintiff expressed being aware that his past hallucinations were not real. Id. The ALJ found that Plaintiff was able to perform simple, routine tasks, make simple work-decisions, and interact with supervisors and co-workers frequently and interact with the public occasionally.

### a. Psychiatric Review Technique ("PRT")

At step two of the sequential evaluation process, an ALJ must consider the severity of a claimant's impairments and whether those impairments or combination of impairments significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 404.1509. The ALJ applies the PRT to evaluate mental impairments. The PRT consists of (1) evaluating the claimant's symptoms, signs, and laboratory findings to determine whether there is a medically determinable impairment (20 C.F.R. § 1520a(b)) and (2) rating the degree of functional limitation in four functional areas (20 C.F.R. § 1520a(c)). See Timothy v. O'Malley, 2024 WL 3691692, at *4 (S.D. Ca. Aug. 6, 2024). The four areas of mental functioning (i.e., (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself) are known as the "Paragraph B" criteria. The ALJ uses the following ratings to describe the degree of functional limitation in each of the areas: none, mild, moderate, marked, and extreme. 20 C.F.R § 416.920a(c)(4). To meet the "Paragraph B" criteria, a claimant must have an extreme limitation, or two marked limitations, in any of the four areas of mental functioning. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ's opinion must set forth his findings and conclusion based on the

PRT. 20 C.F.R. § 404.1520a(e); Keyser v. Comm'r of Soc. Sec. Admin., 648 F.3d 721, 726 (9th Cir. 2011).

The ALJ followed the PRT and found that Plaintiff had moderate limitations in all four areas of mental functioning. Tr. 24-25. The ALJ formulated an RFC which provides that Plaintiff can "perform simple, routine tasks and make simple work-related decisions and is able to interact with supervisors and coworkers frequently and the public occasionally." Tr. 26. Plaintiff does not contend that the ALJ erred in rating his "Paragraph B" limitations as moderate or that the RFC does not account for moderate limitations. Rather, he posits that the ALJ "did not make the ["paragraph B"] assessments," rendering his decision "incomplete." Docket No. 10 at p. 23. The record dispels Plaintiff's argument. See Hoopai v. Astrue, 499 F.3d 1071, 1077-78 (9th Cir. 2007) (finding that the ALJ complied with the requirements of 20 C.F.R. § 1520a by rating and assessing the claimant's limitations in each of the four functional areas). There is no compelling basis to remand on this claim of error. See e.g., Otero-Vicenty v. Comm'r of Soc. Sec., 2024 WL 1381402, at *10 (D.P.R. Mar. 31, 2024) ("Plaintiff has neither explained nor demonstrated through evidence of record how this alleged symptom warranted the imposition of further functional limitations than those found by the ALJ in his RFC. After all, remand is only appropriate if Plaintiff can demonstrate that the [relevant impairment] imposes an additional restriction beyond those recognized in the [ALJ's] RFC[.]"); Timothy, 2024 WL 3691692, at *5-6 (remanding because the ALJ did not apply the PRT and thus failed to include a specific finding as to the degree of limitation in any of the four functional areas).

### b. SSR 96-8: Function-by-Function Basis

Plaintiff asserts that the ALJ erred by failing to do a function-by-function RFC assessment as required by SSR 96-8p. Docket No. 10 at pp. 25-27. The Commissioner contends that Plaintiff has not explained why the RFC is not sufficiently detailed. Docket No. 17 at pp. 7-9. And that Plaintiff aims to have the Court weigh the evidence already considered by the ALJ.

The RFC constitutes "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p; see also 20 C.F.R. § 404.1545(a). Prior to determining a claimant's RFC, the ALJ must conduct a function-by-function analysis. Olivera-Bahamundi, 2021 WL 1177339, at *6; SSR 96-8p, 1996 WL 374184, at *1. The functions that must be addressed include the physical functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, and each function "must be

considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours,') even if the final RFC assessment will combine activities." SSR 96-8p, 1996 WL 374184, at *5. Only after conducting such function-by-function analysis may the ALJ set forth the RFC in terms of the exertional levels (i.e., sedentary, light, medium, heavy, and very heavy). Id. at *1. But "[a]lthough an ALJ should address all the functional limitations associated with a claimant's impairments, failure to do so will not invalidate the decision if the functional limitations can be otherwise inferred." Rosario v. Comm'r of Soc. Sec., 2021 WL 1157985, at *10 (D.P.R. Mar. 26, 2021). See also Olivera-Bahamundi, 2021 WL 1177339, at *6-7; Mandarano v. Berryhill, 372 F. Supp. 3d 1, 5 (D. Mass 2019).

The ALJ determined that Plaintiff could perform a range of light work with the limitations set forth at Tr. 25-26. The ALJ meticulously described his reasoning and expressly set out a series of exertional and non-exertional limitations, including those related to Plaintiff's ability to sit, stand, walk, lift, carry, push, pull, concentrate, make decisions, perform tasks, make decisions, adapt to change, and interact with others, including supervisors and coworkers. Tr. 24-30. The ALJ considered Plaintiff's symptoms, objective medical evidence, treatment records, and opinion evidence. Id. The ALJ found persuasive the opinions of SSA state consultive examiners and Dr. Santiago. See Weinmeister v. O'Malley, 2024 WL 4218502, at *6 (S.D. Tx. Aug. 6, 2024) (an RFC assessment based on the function-by-function analysis contained in a state consultative examiner's report satisfies SSR 96-8p). Additionally, the ALJ explained that Dr. Pérez's statements that Plaintiff had no capacity for work were disregarded as conclusory. Tr. 30. The ALJ concluded that the overall evidence demonstrated that Plaintiff's combined physical and mental impairments restricted him to the light exertional level established in the ALJ's RFC. Tr. 24-30. Plaintiff cites no case law to support his argument that a function-by-function analysis must be spelled out. The ALJ's functional assessment and discussion thus satisfies the requirements of SSR 96-8p. See Ronald G. v. Comm'r of Soc. Sec. Admin., 2024 WL 2978310, at *6 (D.N.J. June 13, 2024) (SSR 96-8 does not require a detailed function-by-function analysis in writing if the ALJ articulates how the evidence in the record supports the RFC, discusses the claimant's ability to perform sustained work-related activities, and explains any inconsistencies in the record).[3]

---

[3] Plaintiff implicitly asks the Court to take a closer look at the medical records and findings of Doctors Egozcue and Pérez. The Court rejects Plaintiff's invitation to reweigh the evidence. Garcia-

### 2. Step-Five Determination

#### a. GED Reasoning Levels

Plaintiff sustains that the ALJ's determination that he is limited to light work and "simple, routine tasks" is inconsistent with the reasoning and mathematical levels attributed to the jobs of marker, router, or order caller, in the General Educational Development ("GED") reasoning scale in the DOT. Docket No. 10 at pp. 27-32. The DOT is "published by the United States Department of Labor [and] is a comprehensive listing of job titles in the United States. Detailed descriptions of requirements for each job include assessments of exertional level and reasoning ability necessary for satisfactory performance of the work." Muñoz-Cintrón v. Comm'r of Soc. Sec., 2021 WL 840905, at *3 (D.P.R. Mar. 5, 2021) (quoting Augustine v. Barnhart, 2002 WL 31098512, at *6 (E.D. Tex. Aug. 27, 2002)). The DOT assigns a GED reasoning level to listed occupations, ranging from Level 1 (the lowest level) to Level 6 (the highest level). Dictionary of Occupational Titles, App. C, 1991 WL 688702; Cruz Madera v. Saul, 2021 WL 9100419, at *12 (D.P.R. Feb. 26, 2021). Level 1 reasoning requires the ability to "carry out simple one or two-step instructions" and "deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Id. Level 2 reasoning requires the ability to "carry out detailed but uninvolved written or oral instructions" and "deal with problems involving a few concrete variables in or from standardized situations." Id.

The ALJ's RFC assessment of Plaintiff limited him to simple, routine tasks. The jobs suggested by the VE require a Level 2 reasoning. See DOT No. 209.587-034, 1991 WL 671802 (1991) (marker); Dot No. 222.587-038, 1991 WL 672123 (1991) (router); DOT No. 209.667-014, 1991 WL 671807 (1991) (order caller). "[C]ourts have regularly found that DOT reasoning level[] two [] [is] consistent with an RFC limitation to simple and unskilled tasks." Cruz Madera, 2021 WL 9100419, at *12 (quoting Couch v. Berryhill, 2019 WL 2340956, at *5 (D. Mass. June 3, 2019)). The ALJ's RFC assessment of Plaintiff, which limited him to simple, routine tasks, is consistent with the reasoning level required by the positions of marker, router, and order caller.

---

Diaz v. Comm'r of Soc. Sec., 2024 WL 2795764, at * (D.P.R. May 31, 2024); See Evangelista v. Sec. of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1997) (even if the record could justify a different conclusion, the ALJ's determination must be affirmed if it is supported by substantial evidence).

Plaintiff argues that the VE did not account for his math limitation and that the suggested DOT positions require greater levels of mathematical skills. Plaintiff relies on Dr. Santiago's mental status report. Dr. Santiago noted that Plaintiff had "moderate[] difficulty" in subtraction exercises in series of 3 and 7 and "mild[] difficulty" in counting from one (1) to twenty (20) and from twenty (20) to one (1). Tr. 606. The DOT's requirements, however, are not binding "and they are to be applied in light of the [VE's] professional knowledge regarding one's ability to perform an identified job." Logan v. Shalala, 882 F. Supp. 755, 764 (C.D. Illinois, Mar. 30, 1995). See also Conn. v. Sec. of Health and Human Servs., 51 F.3d 607 (6th Cir. 1995) ("[T]he ALJ may rely on the testimony of the vocational expert even if it is inconsistent with the job descriptions set forth in the [DOT]."). The VE reviewed, and was asked to consider, Plaintiff's academic background. Tr. 55, 59. The VE was aware of Plaintiff's intellectual limitations. Tr. 45. In response to questions posed by Plaintiff's counsel, the VE stated that the math requirement in the three jobs was "equivalent to third grade." Tr. 67. She further explained that "[Plaintiff] will not be working with digits and counting in terms of the task that [Plaintiff] will perform, [Plaintiff] will only be marking, putting prices already given, establishing– yes, obviously it would require in terms of what it is recognizing the numbers, but they would be given[.]" Tr. 67. The VE also explained that the jobs identified by her had a math requirement of one because the DOT "will always require a minimum of one" and "there are no jobs that have [] zero." Tr. 68. The VE's professional knowledge and common-sense assessment supported the conclusion that Plaintiff could perform the identified jobs. See Logan, 882 F. Supp. at 764; Oyola-Rosa v. Sec'y of Health and Human Servs., 981 F.2d 1245, 8 (1st Cir. 1992) ("The [GED] required to perform the job is low, and would appear to be appropriate in light of Oyola's fifth grade education."); Martin v. Soc. Sec. Admin. Comm'r, 2010 WL 5364672, at *4 (D. Maine Dec. 21, 2010) (finding that the occupations suggested by the VE, which had a level one in math, could be performed by plaintiff who had basic math skills). Because the ALJ relied on the VE, his conclusion that Plaintiff could perform significant jobs in the national economy was supported by substantial evidence.

    b. **Conflict with SSR-04p**

Plaintiff argues that the ALJ did not comply with SSR 00-4p because he did not resolve the conflict between the VE's testimony and the DOT. Docket No. 10 at pp. 27-32. SSR 00-4p requires that "[w]hen vocational evidence provided by a VE [...] is not consistent with

information in the DOT, the adjudicator must resolve this conflict before relying on the VE […].". SSR 00-4p, 2000 WL 1898704, at *4. But the ALJ "need only resolve such conflicts where they are apparent and have been identified." Cruz Madera, 2021 WL 9100419, at *13; SSR-00-4p, 2000 WL 1898704, at *4; Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."). Counsel for Plaintiff did not object to the purported conflict during the hearing. Tr. 66-69. After listening to the VE's explanation regarding the reasoning and math levels in the three occupations, counsel stated that she had "no further questions." Tr. 69. The conflict claimed by Plaintiff now was neither apparent nor identified to the ALJ during the hearing. And, as previously discussed, DOT reasoning levels two and three have been found to be consistent with an RFC limitation to simple and unskilled tasks.

## IV. Conclusion

The ALJ evaluated the record as a whole and his decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 30th day of September 2024.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge